✎ AO 472 (Rev. 12/03) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

EASTERN District of MICHIGAN

UNITED STATES OF AMERICA
V.
EDWARD WALKER
*Defendant*

**ORDER OF DETENTION PENDING TRIAL**

Case Number: 05- CR - 80617 -DT

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

**Part I—Findings of Fact**

☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a ☐ federal offense ☐ state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed - that is
  ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  ☐ an offense for which the maximum sentence is life imprisonment or death.
  ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____.*
  ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
☐ (3) A period of not more than five years has elapsed since the ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).
☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

**Alternative Findings (A)**

☑ (1) There is probable cause to believe that the defendant has committed an offense
  ☑ for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.
  ☐ under 18 U.S.C. § 924(c).
☑ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

**Alternative Findings (B)**

☑ (1) There is a serious risk that the defendant will not appear.
☑ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

SEE ATTACHED :

Text of reasons for the Detention of EDWARD WALKER

**Part II—Written Statement of Reasons for Detention**

I find that the credible testimony and information submitted at the hearing establishes by ☐ clear and convincing evidence ☑ a preponderance of the evidence that

NO CONDITION OR COMBINATION OF CONDITIONS WILL REASONABLY ASSURE THE APPEARANCE OF DEFENDANT AS REQUIRED FOR TRIAL

**Part III—Directions Regarding Detention**

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

| 7/26/2005 | s/Steven D. Pepe |
|---|---|
| Date | *Signature of Judge* |
| | s/Steven D.Pepe, U.S. Magistrate Judge |
| | *Name and Title of Judge* |

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

TEXT OF REASONS FOR THE DETENTION OF EDWARD WALKER
05- CR - 80617 -DT

Defendant, EDWARD WALKER, aka Eddie Walker and "E", is charged with Conspiracy to Distribute and Distribution of Controlled Substances in violation of 21 U.S.C. § 846 and § 841(a)(1) (Count One); Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(a)(i) and § 1956(h) (Count Three), and 12 Counts of Use of a Telephone to Facilitate a Drug Conspiracy in violation of 21 U.S.C. § 843(b) (Counts Five, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, Twenty Four, Twenty Five.)

The evidence presented by the case agent, including multiple phone intercepts, indicates that Edward Walker is a relatively high level participant in a conspiracy to distribute tons of marijuana from Mexico involving millions of dollars. Accounting sheet showing certain transactions flr "Jr" and for "E" (Government's Exhibit) 1 indicates that Defendant in January and February of 2004 participated in a joint enterprise involving receipt of over 5,000 pounds of marijuana at a cost of over $4.3 million. This accounting sheet under the "E" column also indicated January and February payments for these drugs made in the total amount of $2,700,200, leaving unpaid amounts due to his supplier of $1,787,129.50.

On one DEA search involving seizure of 4,000 pounds of marijuana found in metal drums, there were multiple empty moving wardrobe boxes in the same location, 20 of which were marked "E" and contained what the agent believed to be marijuana residue in the empty boxes. This suggests that these 20 large boxes were containers that had held the drugs designated for Defendant's distribution and they had already been picked up.

Additional evidence involving phone intercepts between Defendant and his co-defendant sister, Saeeda Walker, indicate that Defendant in March of this year owed his Hispanic suppliers

over ten million dollars, substantially more than Exhibit 1 indicates was owed a year earlier. Saeeda Walker related to Defendant that it was suggested that Defendant "bust out of Phoenix and never return" because the suppliers had fewer contacts for finding him in Detroit than in Phoenix.

Defendant's house on Ramsgate, in the Lathrop Village development in Southfield, which he acquired in 2004 was recently firebombed. (His interest in this house was not disclosed to the Las Vegas Pretrial Services interviewer.) Defendant, through his lawyer, claims he was not living there and bought the premises to rent. Law enforcement authorities do not think Defendant did the arson because there is no insurance on the premises and a large mortgage. There is a suspicion the firebombing may have been an attempt by his supplier to kill or intimidate Defendant for his non-payments.

The enterprise of which Defendant is a small part has had millions of dollars and thousands of pounds of marijuana seized by law enforcement on various occasions during the investigation. Yet, the amounts of marijuana noted above associated with Defendant and the great amount of debt he has outstanding, notwithstanding evidence of his paying millions of dollars for drugs, indicate that Defendant is a very large scale drug dealer.

Other evidence presented through telephone intercepts between Defendant and his sister, Saeeda Walker, shows that Defendant may have cooperated with her in attempting to find the location of two individuals, "Cal" and " Damon", suspected of robbing Saeeda Walker's stash house of $19,000 and an AK-47. Saeeda Walker had put a $50,000 contract on these individuals. Saeeda Walker also appears to have been involved in the shooting of Marcus Smith. A phone intercept involves complaints that the shooters "screwed up" by not killing him when "they were right next to him" and there was a statement questioning whether to attempt to "finish

the job" on Smith in the hospital.

While no firearm was found on Defendant when arrested in Las Vegas with his girlfriend Tulami Dismuke, another co-defendant, a 45 caliber gun with an obliterated serial number and a Glock 40 caliber gun were found at the house Defendant shared with one or two others on 6810 S 40th Drive in Phoenix, Arizona, where he spends substantial time. Records show Defendant recently changed one phones to that address.

Defendant also has used an alias name of John Lemon for which he has an Arizona Drivers License, apparently obtained on January 7, 2004, using a Tucson address. Under that name he has received significant wire transfers in 2004 from various individual in Michigan including Tulami Dismuke. He has also made purchases under that alias, registered a vehicle (Government' exhibit #3) and made 8 one way flights in 2004 under the John Lemon name between Detroit and various cities including Los Angeles, Phoenix, Miami. Only one flight in September to Los Angeles appears to have a return flight to Detroit associated with it. (Government's Exhibit 5) Defendant also has a 2004 drunk driving charge in Scottsdale, Arizona, under the name John Lemon. He also was arrested in Detroit in 1990 under the name James Green.

Defendant was born and raised in Detroit and claims to live with his parents and 5 year old son in Highland Park and work as a barber earning $15,000 a year. He also has a 14 year old daughter living with her mother. Defendant is not married. The law enforcement agents say he often lives in Phoenix, which is supported by various phone intercepts and records.

Defendant has a Highland Park Delivery/Manufacture of Controlled Substances conviction in January 1994 on which he got one year probation. Similar charges were dismissed in October 1990 and again in May 1994 in Wayne County as well as a CCW charge with the

latter.  He pled guilty to Resisting and Obstructing a Detroit police officer on July 4, 2000, and a DUIL in Scottsdale from an August 2004 arrest.  A criminal bench warrant issued from the 45-B District Court in Oak Park for his failure to appear on an OUIL charge.  From 1989-2004, Defendant has 18 traffic violations including 6 failures to appear, nine failures to comply with court judgments and three charges of operating a vehicle under the influence of substances. He tested positive for marijuana by the Eastern District's Pretrial Services.

  Given his prior drug conviction and the quantities of drugs involved, Defendant is facing a mandatory sentence of 20 years to life on these charges. The weight of the evidence is substantial and demonstrates Defendant is a significant member of the overall drug conspiracy.  Defendant has no significant economic or employment ties to Detroit, although there are substantial family ties.  He has moved around he country significantly from telephone and 2004 flight records.  He has used and traveled under an alias name.  His traffic record shows little regard for appearing in court as required or complying with the conditions set by traffic court.

  Defendant is a significant risk of flight due not only the multiple federal charges for an individual with a prior drug conviction, but also because of  his Hispanic suppliers who may already have made an attempt on his life with the firebombs thrown into the bedroom of his Ramsgate house.  Defendant is a danger to the community through his continued involvement in large scale drug dealing. The danger may also involve his cooperation and possible involvement in acts of violence against individuals suspected of robbing his sister's drug stash house.